## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

JERRY L. THOMAS,                     )
                      Plaintiff,     )
v.                                   )          Case No. CIV-07-599-W
                                     )
DAVID PARKER, *et al.*,              )
                      Defendants.    )

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.*, alleging violations of his federal constitutional rights.[1] This matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).  Defendants, Debbie Morton, Justin Jones, Ron Anderson, Richard Kirby, Leo Brown, Brandy Page, Jo Gwinn, Jay Drawbridge, Doug Byrd, Amy Madison, Betsy Hormel, David Parker, Becky Guffy, Rodney Redman, Shannon Reed and Jim Reed (collectively, "the Defendants") have filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment and Brief in Support [Doc. #36].[2]  Plaintiff has responded to the

---

[1]Plaintiff, in most conclusory fashion (citing only the applicable rule), requests class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff's request should be denied.  He does not separately move for class certification and does not identify any members of the proposed class or otherwise support his request with allegations demonstrating he could satisfy the prerequisites for class certification.  *See* Fed. R. Civ. P. 23(a) (numerosity, commonality, typicality and adequacy).

[2]Defendants Katrina Frech, Nurse Chester, Dennis Cotner and Business Manager Brado were previously dismissed from this action.  *See* Order [Doc. #12].

motion [Doc. #38] and Defendants have filed a reply [Doc. #39].  In addition, the Court has received a Special Report from the Oklahoma Department of Corrections [Doc. # 34].

For the reasons set forth below, it is recommended that Defendants' Motion, construed in part as a motion for summary judgment, be granted and that the claims raised in Counts I, III-V, VII-XI, XIII-XVII and XIX-XX be dismissed for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).  It is further recommended that the claims raised in Counts XII and XVIII be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(2) for failure to state a claim upon which relief may be granted.   It is also recommended, in the alternative, that Defendants' Motion to Dismiss be granted as to the claims raised in Counts III, IV, V, VII, VIII and IX, alleging a violation of Plaintiff's rights under RLUIPA and Plaintiff's free exercise rights brought pursuant to 42 U.S.C. § 1983 because Plaintiff has failed to state a claim upon which relief may be granted.   It is further recommended that Plaintiff's claims for monetary damages brought pursuant to 42 U.S.C. § 1983 against the Defendants in their official capacities be dismissed on grounds of Eleventh Amendment immunity. Finally, it is recommended that Plaintiff's Notice of Voluntary Dismissal [Doc. #27] be construed as an amendment to the Complaint pursuant to Fed. R. Civ. P. 15(a).  Pursuant to that amendment, Plaintiff has voluntarily eliminated Counts II and VI of the Complaint.

I.      **Plaintiff's Claims**

Plaintiff is a prisoner in the custody of the Oklahoma Department of Corrections (ODOC) and is incarcerated at the James Crabtree Correctional Center (JCCC) in Helena, Oklahoma.  In his twenty-count Complaint, Plaintiff claims prison officials have substantially burdened his ability to practice his Muslim faith and have established Christianity as the State religion.  In addition, Plaintiff claims Defendants have retaliated against him and denied him access to the courts.  As relief, Plaintiff seeks monetary damages and temporary and permanent injunctive relief including transfer to another facility and protection from "the warden and his gang."  *See* Complaint at 19.[3]

Defendants move for dismissal of all claims raised in the Complaint asserting that Plaintiff has failed to comply with the exhaustion requirement of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  Defendants further seek dismissal of certain claims raised by Plaintiff on grounds that Plaintiff has failed to state a claim upon which relief may be granted, has failed to allege that the Defendants personally participated in the alleged violation of Plaintiff's constitutional rights, and that the Defendants are immune from suit.

II.     **Plaintiff's Litigation History**

Plaintiff has brought several civil rights lawsuits against the ODOC and the various correctional facilities where he has been incarcerated.  *See, e.g.,* Special Report at 16 (listing

---

[3]Plaintiff has inserted additional pages to the form complaint.  Therefore, for ease of identification, the page numbers referenced are to the electronic filing page numbers assigned to the document and not to any typographical or handwritten page number.

cases). These lawsuits consistently include claims, like those raised here, alleging that the ODOC and prison officials impermissibly favor Christianity as evidenced by the use of Christian volunteers, the more favorable treatment of Christian inmates and the establishment of Christianity as the official religion of the ODOC. *See, e.g., Abdulhaseeb v. Hargett*, 171 Fed. Appx. 224 (10th Cir. Feb. 14, 2006) (unpublished op.); *Abdulhaseeb v. Saffle*, 65 Fed. Appx. 667 (10th Cir. March 27, 2003) (unpublished op).[4]

Most recently, Plaintiff pursued an action in this judicial district alleging a violation of his federal constitutional rights under 42 U.S.C. § 1983 and RLUIPA for alleged wrongs occurring during his incarceration at Great Plains Correctional Facility in Hinton, Oklahoma, and the Oklahoma State Penitentiary in McAlister, Oklahoma. *See Abdulhaseeb v. Calbone*, No. CIV-05-1211-W (W.D. Okla.). In a Report and Recommendation filed February 12, 2008, the magistrate judge recommended that Defendants' motion for summary judgment be granted. *See id.*, Report and Recommendation [Doc. #137]. The district judge adopted the Report and Recommendation by Order filed April 2, 2008. *See id.*, Order [Doc. #141].[5]

During the pendency of that action, Plaintiff filed the instant action and brings similar claims against the ODOC Defendants and prison officials at JCCC. In addition, Plaintiff

---

[4]Plaintiff's name as reflected in these cases is Madyun Abdulhaseeb, also known as Jerry L. Thomas.

[5]The claims raised in Counts I, V, VI, VIII, IX, X, XI and XII are similar to or the same as claims raised in this action though, as noted, they arose during Plaintiff's incarceration at facilities other than JCCC. The Court entered summary judgment in favor of the defendants as to the claims raised in Counts I, V, X, XI and XII and dismissed for failure to exhaust administrative remedies the claims raised in Counts VI, VIII and IX.

subsequently has filed yet another lawsuit in this judicial district against prison officials at JCCC. *See Thomas v. Guffy*, CIV-07-823-W.  It appears that Plaintiff has named as defendants a number of the same prison officials as named in the instant action and that at least some of the claims raised in that action are duplicative of the claims raised in the instant action.

Defendants have filed a Motion to File Supplemental Authority [Doc. #56] and attach to the Motion the Report and Recommendation and the Order adopting the Report and Recommendation filed in Case No. CIV-05-1211-W.[6]  Defendants have not stated the purpose for supplementing the record with this authority.  Yet, it appears Defendants are seeking to place the onus on this Court to address, in the first instance, whether any of Plaintiff's claims are barred by principles of issue preclusion. Defendants have not undertaken the task of analyzing whether principles of issue preclusion apply to bar litigation of some or all Plaintiff's claims.[7]  This Court, therefore, does not independently undertake that task.

---

[6]Defendants' Motion has been granted by separate order filed simultaneously with this Report and Recommendation.

[7]In their Motion to Dismiss/Motion for Summary Judgment, Defendants state:

[I]n light of the substantial task of comparing and contrasting the various complaints and amended complaints as well as the determinations filed in Plaintiff [sic] other lawsuits, Defendants are unable at this time to assert all of the instances of issue preclusion and res judicata applicable to Plaintiff's claims herein . . . .

*See* Defendants' Motion at 6, footnote 2.

### III.   Standards of Review

#### A.   Dismissal of a *Pro Se* Complaint

In determining whether dismissal of a *pro se* complaint is proper for failure to state a claim upon which relief may be granted, the Court must take all well-pleaded factual allegations as true and view those facts in the light most favorable to the plaintiff.  Dismissal is proper if, taking those facts as true, the plaintiff fails to present a plausible right to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-1248 (10th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).  "The burden is on the  plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Robbins*, 519 F.3d at 1247 (*quoting Twombly*, 127 S.Ct. at 1965). Where, as here, the litigant appears *pro se*, the Court construes the complaint liberally.  *Haines v. Kerner*, 404 U.S. 519 (1972).

#### B.   Summary Judgment

Defendants have raised the affirmative defense of Plaintiff's failure to exhaust administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a), and have attached materials outside the pleadings in support of this affirmative defense.  *See Jones v. Bock*, 127 S.Ct. 910, 921 (2007) ("[F]ailure to exhaust is an affirmative defense under the PLRA . . . ."). Therefore, with respect to the issue of exhaustion of administrative remedies, the Defendants' motion to dismiss is construed as a motion for summary judgment.  *See* Fed. R. Civ. P. 56.

When an affirmative defense is raised in a motion for summary judgment, the defendant must demonstrate that "no disputed material fact exists regarding the affirmative defense asserted." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). "If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Id.* "If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." *Id.*

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). To defeat a motion for summary judgment, evidence must be based on more than mere speculation, conjecture or surmise. *Rice v. United States*, 166 F.3d 1088, 1091-1092 (10th Cir. 1999). Moreover, the existence of a factual issue does not preclude entry of summary judgment where there is no evidence to support a dispute on that issue or the evidence is so one-sided that no reasonable juror could find for the other side. *True v. United States*, 190 F.3d 1165, 1177 (10th Cir. 1999).

IV.  **Analysis**

A.  **Notice of Voluntary Dismissal – Counts II and VI**

On August 1, 2007, Plaintiff filed a "Notice of Voluntary Dismissal Plaintiff's Counts II and VI Pursuant to FRCP 41(a)" [Doc. #27].  Plaintiff's attempt at voluntary dismissal of the claims raised in Counts II and IV is not authorized by Rule 41(a).  Rule 41(a) of the Federal Rules of Civil Procedure "speaks to dismissal of an action, not just a claim [or claims] within an action."  *Gobbo Farms & Orchards v. Poole Chemical Co., Inc.*, 81 F.3d 122, 123 (10th Cir. 1996).  "[Plaintiff] offers no authority and [this Court] ha[s] found none, to support [his] contention that Rule 41(a) applies to dismissal of less than all claims in an action."  *Id.*

Instead, when a plaintiff seeks to eliminate one or more but less than all of several claims, Rule 15(a) of the Federal Rules of Civil Procedure governs.  *See, e.g., Hells Canyon Preservation Council v. United States Forest Serv.*, 403 F.3d 683, 687-688 (9th Cir. 2005).  Pursuant to Rule 15(a), where, as here, leave to amend was sought before a responsive pleading was served, the party may amend the pleading once as a matter of course.  Fed. R. Civ. P. 15(a).  Therefore, the Court construes Plaintiff's Notice of  Voluntary Dismissal under Fed. R. Civ. P. 41(a) as an amendment to the Complaint under Fed. R. Civ. P. 15(a), and pursuant to that amendment Plaintiff has voluntarily eliminated the claims raised in Counts II and VI of the Complaint.

B.     __The PLRA Exhaustion Requirement__

Pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a mandatory exhaustion requirement exists for inmates challenging prison conditions in federal court.[8] A prisoner properly exhausts administrative remedies by completing the administrative review process as defined by the prison grievance system. *Jones v. Bock*, 127 S.Ct. at 922. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*, 127 S.Ct. at 923. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Moreover, "[t]o exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007).

---

[8]Section 1997e(a) states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

1.     **The ODOC Grievance Procedure**

The grievance procedure of the Oklahoma Department of Corrections (ODOC) requires that an inmate make an initial attempt to resolve the complaint by talking with a case manager, probation or parole officer, supervising employee or other staff within three days of the incident.   *See* Special Report, Attachment 53, Inmate/Offender Grievance Process, OP-090124 (IV)(A).   The inmate must then submit a Request to Staff to the unit manager stating the problem to be addressed and the Request to Staff must be submitted within seven days of the incident. *See id.*,  OP-090124(IV)(B).  The next step in the grievance procedure requires an inmate to submit to the reviewing authority a formal grievance using the "Inmate/Offender Grievance Report Form"  along with the Request to Staff form and the response.  *See id.*,  OP-090124(V)(A).  If the inmate does not follow the instructions for submitting a grievance, the grievance may be returned unanswered for proper completion and, if allowed, the inmate must properly resubmit the grievance within ten calendar days of receipt. *See id.*, OP-090124(V)(A)(7).  The final step in the grievance procedure requires the inmate to appeal the reviewing authority's response to the grievance to the administrative review authority.  *See id.*, OP-090124(VII)(B) and (D).

2.     **Plaintiff's Grievance History at JCCC**

The record before the Court shows that between March 15, 2007, and July 4, 2007, Plaintiff submitted a total of 31 grievances.  *See* Special Report, Attachment 58, Affidavit of Becky Guffy, ¶ 4; *see also* Defendants' Reply [Doc. #39], Exhibit 3 (summary of Plaintiff's grievances filed at JCCC through July 2007). On March 26, 2007, Plaintiff

received a letter from Defendant Becky Guffy, Warden's Assistant, warning him that he had been abusing the grievance procedure and that continued abuse would result in imposition of grievance restrictions. *See* Special Report, Attachment 16 at 9.[9] Plaintiff did not heed this warning and the following day, March 27, 2007, Plaintiff submitted seven grievances. *See* Special Report, Attachments 17-23. As a result, on March 28, 2007, Plaintiff received notification that he had been placed on grievance restriction for twelve months through March 28, 2008. *See* Special Report, Attachment 24.[10]

Due to Plaintiff's placement on grievance restriction, additional requirements governed the submission of grievances by Plaintiff after March 28, 2007. Under ODOC policy, all grievances submitted during a restriction period must be accompanied by a showing of cause as to why the inmate should be permitted to grieve. *See* Special Report, Attachment 53, Inmate/Offender Grievance Process, OP-090124 (IX)(B). The grievance must also be accompanied by a duly verified affidavit:

> The inmate/offender will submit a duly verified affidavit, made under penalty of discipline for lying to staff, attached to the grievance stating that all contents

---

[9]Pursuant to ODOC policy, prisoners who abuse the grievance process by continuing to file grievances which do not comply with the policy, which are duplicative, which are intended to harass, or which contain procedural defects, may be placed on grievance restriction. *See* Special Report, Attachment 53, Inmate/Offender Grievance Process, OP-090124, ¶ IX(A)(1). The warning was prompted by Plaintiff's submission of eight Requests to Staff on March 21, 2007, all on the related issue of the facility's alleged endorsement of Christian religious practices to the detriment of Plaintiff's ability to practice his Muslim faith. *See* Special Report, Attachment 16 at 1-8.

[10]Plaintiff thereafter continued to abuse the grievance process. As a consequence, the grievance restriction period was extended through May 10, 2008. *See* Special Report, Attachment 38. And, the grievance restriction was extended yet again, through June 13, 2008, when Plaintiff further continued to abuse the grievance process. *See* Special Report, Attachment 45.

of the grievance are true and correct to the best of the inmate's /offender's knowledge and belief.  The affidavit will also contain a list by grievance number, date, description, and disposition at each level, of all grievances previously submitted by the inmate/offender within the last 12 months.

*Id.*, OP-090124(IX)(B)(2)(a).  The grievance procedure further provides that if a grievance is returned on grounds that compliance with the requirements has not been met, "[t]he grievance may proceed when the inmate/offender meets the guidelines outlined in this section."  *Id.*, OP-090124(IX)(B)(2)(c)-(d).

Defendants move for summary judgment, relying upon the Special Report which includes copies of the grievances submitted by Plaintiff and pertaining to the claims raised in this Complaint.  The grievances were returned to Plaintiff unanswered due to procedural defects.  Therefore, Defendants claim that Plaintiff has not properly exhausted administrative remedies as to any of the claims raised in the Complaint.  In objecting to Defendants' exhaustion defense, Plaintiff attaches the identical grievances as to most of the claims raised in the Complaint.  In a one-paragraph section of his Objection to Defendants' Motion, he identifies, count by count, the grievances which purportedly satisfy the exhaustion requirement.  *See* Plaintiff's Objection [Doc. #38] at 6.  However, Plaintiff provides no adequate explanation regarding the procedural defects and/or the steps he took, if any, to cure those defects.  *See Fields*, 511 F.3d at 1112-1113 (stating that the court has no obligation to examine each of the ODOC's grievance denials "to see whether each grievance was in fact flawed").  Instead, Plaintiff contends that his placement on grievance restriction rendered administrative remedies unavailable to him.  Plaintiff argues, too, that Defendants have

12

prevented him from exhausting administrative remedies by imposing technical requirements and refusing to give proper notice and/or instruction as to those requirements.

Not only are Plaintiff's contentions unsupported by the record, but further, as evidenced by the record and findings of the magistrate judge in Case No. CIV-05-1211-W, Plaintiff is intimately familiar with the compliance requirements of the ODOC's grievance procedure and, in particular, the requirements accompanying placement on grievance restriction.    The ODOC has uniformly and consistently applied and enforced these requirements in reviewing Plaintiff's grievance submissions.  As observed by the magistrate judge in Case No. CIV-05-1211-W: "[Plaintiff] continues to argue regarding the appropriateness of the prison administration's interpretation of its policy, but does not dispute the fact that he failed to comply with that policy as interpreted."  *See Abdulhaseeb v. Calbone*, No. CIV-05-1211-W (W.D. Okla. April 2, 2008) Report and Recommendation [Doc. #137] at 25.  As pertinent to the particular claims for relief alleged in this action, the Court further addresses below Plaintiff's allegations that Defendants have acted to prevent him from exhausting administrative remedies.  The Court rejects these allegations as the record demonstrates Plaintiff has refused to adhere to the requirements of the ODOC's grievance restriction process, not that Defendants have acted to prevent him from satisfying those requirements.

13

**3.** **Analysis of Plaintiff's Efforts to Exhaust Administrative Remedies**

**Counts I and III -- Halal Diet and Muslim Inmate Clerics**

In Count I of the Complaint, Plaintiff alleges that he has been denied a halal Islamic diet in violation of his equal protection rights because similarly situated Jewish inmates are provided kosher diets. *See* Complaint at 8. In Count III of the Complaint, Plaintiff claims that officials at JCCC and the ODOC allow Muslim inmates to act as "de facto DOC clergy" to conduct Islamic religious services and that this practice substantially burdens his freedom of religious expression. *See* Complaint at 9.

Plaintiff relies upon the identical grievances as those set forth in the Special Report as evidence that he exhausted administrative remedies with respect to the claims raised in Counts I and III. *See* Special Report, Attachment 17, JCCC-07-46 (Count I) and Special Report, Attachment 19, JCCC-07-48 (Count III); *see also* Plaintiff's Objection at 6 and Exhibit 2 (Count I) and Exhibit 4 (Count III). Therefore, it is undisputed by the parties that these grievances govern the issue of exhaustion of administrative remedies as to these claims.

The grievances submitted by Plaintiff to exhaust the claims raised in Counts I and III of the Complaint were each returned to Plaintiff unanswered on the same or similar grounds. Plaintiff was advised with respect to each grievance that it was being returned because the Plaintiff was on grievance restriction and he did not include the proper documentation. In addition, Plaintiff received instructions to explain how the respective grievances did not raise issues that were the same as issues Plaintiff had both previously litigated against the ODOC and other correctional facilities and issues Plaintiff had raised in pending litigation.

14

*See* Special Report, Attachment 17 at 6, JCCC-07-46 (Count I) and Special Report, Attachment 19 at 6, JCCC-07-48 (Count III).[11]

There is no evidence that Plaintiff took any further steps regarding exhaustion of administrative remedies as to these claims. He did not resubmit the grievances with proper documentation or provide the explanation, as requested, to inform prison officials how the claims raised in the grievances were different from claims already the subject of litigation. *See Jernigan*, 304 F.3d at 1032 ("[W]e reject [plaintiff's] assertion that inmates do not have to *properly* complete the grievance process, and they do not have to *correct deficiencies*.") (emphasis in original). Because Plaintiff did not follow the proper grievance procedure, the claims raised in Counts I and III of the Complaint are unexhausted.[12]

_____

[11]Pursuant to the ODOC grievance procedure, "[g]rievances may not be submitted about matters that are in the course of litigation." *See* Special Report, Attachment 53, Inmate/Offender Grievance Process, OP-090124, ¶ II(B).

[12]With respect to the claim raised in Count I, additional deficiencies accompany Plaintiff's attempt at exhaustion of administrative remedies. Plaintiff submitted a Request to Staff on March 21, 2007 and requested "a Halal Islamic diet for all meals and Islamic Celebrations." *See* Plaintiff's Objection, Exhibit 2 at 5; Special Report, Attachment 17 at 1. Plaintiff received a response advising him that the Islamic community may receive a non-pork diet and that if this diet was not "accurate" with Plaintiff's faith, he could make a request with DOC religious services to have the diet changed. Plaintiff then filed a grievance on March 27, 2007. Warden Parker denied relief and advised Plaintiff to complete and submit a Special / Religious Diet Request Form, in accordance with ODOC OP-030112(VI)(A). There is no evidence that Plaintiff submitted this form as instructed, or took any further steps with respect to this grievance.

In addition, the claim raised in Count I appears to be meritless. The Court notes that as set forth in the Special Report, Plaintiff was placed on the non-pork diet list at his request on May 5, 2006, nearly one year before he submitted this grievance. *See* Special Report at 1 and Attachment 3. The Court further notes that Plaintiff has raised this claim in prior litigation, and each time relief has been denied. Most recently, the claim was rejected in Case No. CIV-05-1211-W. *See* Report and Recommendation [Doc. #137] and Order Adopting [Doc. #141]. The Court granted summary judgment to the defendants on Plaintiff's RLUIPA claim finding Plaintiff failed to demonstrate "that

(continued...)

## Count IV – Permanent Display of Crucifix

Plaintiff claims in Count IV of the Complaint that his free exercise of religion has been substantially burdened because a crucifix is on permanent display in the sanctuary of the chapel at JCCC.  *See* Complaint at 10.  It is undisputed by the parties that grievance numbers JCCC-07-49 and JCCC-07-55 govern the issue of exhaustion of administrative remedies with respect to the claim raised in Count IV.  *See* Plaintiff's Objection at 6 and Exhibit 5;  *see also* Special Report, Attachments 20 and 25.[13]

On March 21, 2007, Plaintiff submitted a Request to Staff and requested that the cross be removed from the sanctuary wall and put away except during Christian religious services.  *See* Special Report, Attachment 20 at 1.  Plaintiff was advised that the cross on display is covered by a projector screen when all other religious groups use the sanctuary and that all

---

[12](...continued)
a vegetarian or non-pork diet would cause him to significantly modify or violate his religious beliefs" and, therefore, that Plaintiff failed to demonstrate a substantial burden on religious exercise.  *See* Report and Recommendation at 46.  The Court also granted summary judgment on Plaintiff's First Amendment free exercise and establishment clause claims challenging his right to a halal diet.  *Id.* at 52-60.

Moreover, as observed in the Report and Recommendation, Plaintiff also filed a similar lawsuit alleging that "the ODOC's refusal and/or inability to provide the specific Muslim diet he requested violated the Free Exercise Clause of the First Amendment."  *Id.* at 20 *citing Abdulhaseeb v. Beasley*, CIV-03-1404-W, slip op. at 27-28 (W.D. Okla Oct. 31, 2005) (M.J. Roberts) *adopted* slip. op. at 3-4 (W.D. Okla. Jan. 17, 2006) (J. West), *appeal pending*, Case No. 07-6270 (10th Cir. Nov. 16, 2007).  As the Court stated, "[t]he issues were determined against Plaintiff in that case."  *Id.*

[13]Although Plaintiff attaches to his objection only grievance JCCC-07-55, he cites grievance JCCC-07-49 in support of exhaustion of administrative remedies as to the claim raised in Count IV.  *See* Plaintiff's Objection at 6.

religious groups are allowed to display religious symbols during their respective uses of the sanctuary.  Relief was denied.  *Id.*

On March 26, 2007, Plaintiff submitted grievance JCCC-07-49.  *See* Special Report, Attachment 20 at 2.  On March 28, 2007, the grievance was returned unanswered on grounds that the grievance form was not filled out completely.  *See id.* at 3.[14]  Plaintiff took no further steps to complete the grievance procedure with respect to grievance number JCCC-07-49.

Instead, on April 1, 2007, Plaintiff submitted another grievance on this issue, JCCC-07-55.  *See* Plaintiff's Objection, Exhibit 5 at 2-5; *see also* Special Report, Attachment 25 at 2-3.  On April 8, 2007, Becky Guffy, the Warden's Assistant, returned the grievance unanswered on grounds that Plaintiff was on grievance restriction and had not included the proper documentation.  *See* Special Report, Attachment 25 at 4.  Plaintiff was further instructed that the grievance was being returned because he failed to include a description of each grievance in his affidavit as required by the grievance restriction procedures.[15]  Plaintiff was advised that he had ten calendar days to resubmit the grievance.  *Id.*  There is no evidence that Plaintiff resubmitted this grievance.  Nor is there any evidence that Plaintiff took any further steps regarding exhaustion of administrative remedies as to this claim.

---

[14]Plaintiff did not fill out the portion of the grievance form requesting the following information: name, ODOC number, race, gender and facility work detail.  *Id.*

[15]Plaintiff provided only a one-word parenthetical to describe the grievances previously submitted.  As evidenced by the grievances returned unanswered on this basis, prison officials repeatedly advised Plaintiff that a more detailed description was required but Plaintiff continued to ignore this notification and disregard compliance with this requirement of the ODOC's grievance restriction procedures. *See* Special Report, Attachment 53, Inmate/Offender Grievance Process, OP-090124 (IX)(B)(2)(a).

Because Plaintiff did not follow the proper grievance procedure, the claim raised in Count IV of the Complaint is unexhausted.

### Counts V and VII -- Protestant Volunteers

Plaintiff claims in Count V of the Complaint that his freedom of religious expression is substantially burdened because prison officials at JCCC and the ODOC rely exclusively on Protestant volunteers to manage the volunteer program. *See* Complaint at 10. In Count VII of the Complaint, Plaintiff claims the volunteer program, as set forth in ODOC OP-090211, establishes Christianity as the State religion and thereby substantially burdens his freedom of religious expression. *See* Complaint at 11.[16]

On March 27, 2007, Plaintiff submitted grievances addressing the issues raised in these claims and the grievances were returned unanswered on March 28, 2007, on grounds

---

[16]Plaintiff raised this same claim in Case No. CIV-05-1211-W. In Count VI of the Complaint filed in that action, he alleged that "Defendants have established Christianity as the state religion [thereby] substantially burdening the expression of his religion." *See* Report and Recommendation at 3, 23. The magistrate judge recommended dismissal of the claim because Plaintiff did not satisfy § 1997e(a)'s exhaustion requirement. *See id.* at 23-26. As observed by the magistrate judge in that action, Plaintiff had raised a similar claim in a prior action:

> Plaintiff filed a previous lawsuit, *Abdulhaseeb v. Oklahoma Department of Corrections*, et al., CIV-98-0296, United States District Court for the Eastern of Oklahoma, in which he asserted that ODOC had treated Muslim inmates different from Christian inmates, that prison officials attempted to make Christianity the official ODOC religion, and that prison officials hired only Christian religious leaders. *See* DOC Defendants' Motion to Dismiss/Motion for Summary Judgment, Exhibit 2. In that case, Plaintiff was afforded a trial on the merits, and judgment was granted in favor of ODOC and the DOC Defendants named in that action. *See id.* at Exhibit 3.

*Id.* at 19.

that the issues had already been raised the day before in grievance JCCC-07-47. *See* Special Report, Attachment 21, JCCC-07-50 (Count V) and Special Report, Attachment 23, JCCC-07-52 (Count VII); *see also* Plaintiff's Objection at 6 and Exhibit 6, JCCC-07-50 (Count V) and Plaintiff's Objection at 6 and Exhibit 8, JCCC-07-52 (Count VII). The fact that the issues had been raised in a previous grievance does not render the claims raised in Counts V and VII exhausted because the record shows Plaintiff did not properly exhaust the underlying grievance, JCCC-07-47.

Plaintiff had submitted grievance JCCC-07-47 on March 26, 2007. He stated the following in support of this grievance:

> The administration, management, supervision, and coordination of all religious programs by Protestant Christian state, regional, local, and facility religious coordinators substantially burdens my freedom of religious expression in that it establishes Protestant Christianity as the State religion.

*See* Special Report, Attachment 18 at 2.

On March 29, 2007, Plaintiff received the following response to this grievance:

> The religious programs schedule contains activities for a variety of faith groups, to include the Muslim faith. Omar Muhammad a badged volunteer from Oklahoma City was here at this facility recently to teach classes for Jumar. To hire a person specifically based on their religion would be discrimination. All persons applying to ODOC are hired based on the Merit System, which is based on ability – abilities as demonstrated in competitive examinations. Race, religion as well as gender are not a factor.
>
> Relief denied.

*See* Special Report, Attachment 18 at 4.

On April 2, 2007, Plaintiff submitted an appeal of the grievance denial.  On April 19, 2007, the grievance appeal was returned unanswered.  Plaintiff was advised that he was on grievance restriction and that he did not include proper documentation.  Plaintiff also received instructions to "[e]xplain how this grievance is not the same as issues previously litigated against DOC, LCC and MACC in which you lost your lawsuit, as well as that currently being litigated against DOC, OSP, and GPCF."  *See* Special Report, Attachment 18 at 6.

Plaintiff has failed to provide evidence that he complied with the request for additional information. Instead, Plaintiff chose to submit multiple deficient grievances, grievance numbers JCCC-07-50 and JCCC-07-52.  Therefore, Plaintiff failed to comply with the ODOC requirements set forth in the grievance restriction procedures necessary to exhaust administrative remedies.  *Compare Hoover v. West*, 93 Fed. Appx. 177, 180 (10th Cir. Feb. 19, 2004) (unpublished op.) (even where prison officials made mistake in returning grievance on ground prisoner had previously filed grievance on same issue, because prisoner was given the opportunity to cure this deficiency and did not, dismissal for failure to exhaust was proper).  Accordingly, the claims raised in Counts V and VII are unexhausted.

### Count VIII – Alias Name

Plaintiff claims in Count VIII of the Complaint that his freedom of religious expression has been substantially burdened because the ODOC continues to use the name set forth on the conviction of judgment and sentence for which he is in custody, Jerry Thomas. Plaintiff has requested that the ODOC use the name Madyun Abdulhaseeb, Plaintiff's legal

name pursuant to a name change proceeding which Plaintiff alleges took place in 1990 in the

District Court of Cleveland County, State of Oklahoma. *See* Plaintiff's Complaint at 12.[17]

It is undisputed by the parties that grievance JCCC-07-59 governs the issue of exhaustion of

administrative remedies with respect to the claim raised in Count VIII of the Complaint. *See*

Plaintiff's Objection at 6 and Exhibit 10; *see also* Special Report, Attachment 27.

On April 9, 2007, Plaintiff submitted a Request to Staff requesting that his legal name,

Madyun Abdulhaseeb, be recognized and his former name, Jerry Thomas, be designated his

alias name. The request was denied on April 10, 2007. *See* Plaintiff's Objection, Exhibit 10

at 5; *see also* Special Report, Attachment 27 at 1. Plaintiff then filed a grievance on April

---

[17]Plaintiff has previously filed a lawsuit raising a virtually identical claim. Plaintiff was incarcerated at the Lexington Correctional Facility at the time the claims arose in that action. *See Abdulhaseeb v. Saffle*, 65 Appx. 667 (10th Cir. March 27, 2003) (unpublished op). The Tenth Circuit affirmed the district court's dismissal of this claim:

> Appellant contended that his constitutional rights were violated by the prison's requirement that, on official forms, he use the name under which he was first incarcerated. He legally changed his name in 1990. The district court dismissed this claim in its initial order, relying on the balancing test set out in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). First Order at 15. We agree. While appellant may have a First Amendment interest in using his changed name, *see Malik v. Brown*, 71 F.3d 724, 727 (9th Cir.1995), that does not trump the prison's interests in security and efficient record-keeping. *See Felix v. Rolan*, 833 F.2d 517, 519 (5th Cir.1987). It is clear from the record that appellant is allowed to use his changed name, so long as he includes his incarcerated name on official forms. This claim was correctly dismissed.

*Id.* at 671-672.

As to the ODOC Defendants, in addition to principles of issue preclusion barring this claim, the claim appears to be barred by the applicable two-year limitations period. *See Meade v. Grubbs*, 841 F.2d 1512, 1524 (10th Cir. 1988). However, as the ODOC Defendants have not sought dismissal of the claim raised in Count VIII on either of these grounds, these issues are not addressed.

12, 2007, and the grievance was returned unanswered on April 17, 2007. *See* Special Report, Attachment 27 at 2-4. Plaintiff was advised that the grievance was being returned because he was on grievance restriction and he had not included the proper documentation. In addition, Plaintiff was advised that his affidavit did not provide a sufficient grievance description. *Id*. There is no evidence that Plaintiff took any further steps regarding exhaustion of administrative remedies as to this claim. Because Plaintiff did not properly follow the grievance procedure, the claim raised in Count VIII of the Complaint is unexhausted.

### Counts IX - XI and XIV - XVI -- Various Claims

In Count IX of the Complaint, Plaintiff claims that the broadcast of a Christian television network at JCCC substantially burdens his freedom of religious expression by establishing Christianity as the State religion. *See* Complaint at 13. In Count X, Plaintiff alleges his freedom of religious expression is substantially burdened because JCCC officials solicit free Bibles from the Gideon Bible Company but make no similar efforts to obtain Qur′ans for Muslim inmates. *See id*. In Count XI, Plaintiff claims the free and continuous use of Bibles at JCCC substantially burdens his religious expression because the facility does not maintain a supply of Qur′ans. *See id*. at 14. In Counts XIV, XV and XVI, Plaintiff claims various Defendants have interfered with the grievance process and consequently, Plaintiff's ability to exhaust administrative remedies. *See id*. at 16-17.

The grievances submitted by Plaintiff to exhaust the claims raised in Counts IX, X, XI, XIV, XV and XVI were each returned to Plaintiff unanswered on the same or similar

grounds.  Plaintiff was advised that he was on grievance restriction and had not included the

proper documentation.  In addition, Plaintiff was advised that the affidavits submitted in

support of the grievances were not correct because the affidavits had not been notarized.  *See*

Special Report Attachment 31 (Count IX); Attachment 32 (Count X), Attachment 33 (Count

XI), Attachment 30 (Count XIV), Attachment 36 (Count XV) and Attachment 37 (Count

XVI).[18] As to a few of the grievances, Plaintiff was further advised: "[g]rievances submitted

are repetitious."  *See* Special Report Attachment 36 (Count XV) and Attachment 37 (Count

XVI).[19]

Plaintiff claims notary services were not available to him on April 17, 2007, and April

18, 2007, because the notary, Amy Madison, was not present at the facility to provide those

services.[20]  Plaintiff submitted two Requests to Staff and two grievances complaining about

Ms. Madison's absence on these dates.  *See* Special Report Attachments 36 and 37; *see also*

---

[18]Plaintiff submits the identical grievances in support of exhaustion of administrative remedies as to these claims.  *See* Plaintiff's Objection, Exhibit 13 (Count IX); Exhibit 14 (Count X); Exhibit 15 (Count XI); Exhibit 12 (Count XIV); Exhibit 16 (Count XV) and Exhibit 17 (Count XVI).

[19]The grievances submitted in support of Counts XV and XVI, JCCC-07-81 and JCCC-07-82, respectively, are virtually identical.

[20]Ms. Madison acknowledges that on April 17, 2007, she had an appointment with Plaintiff to provide notary services but that she cancelled the appointment because she had to attend a funeral. She further explains that she left instructions for Plaintiff to return the next day, April 18, 2007. However, she had to cancel the April 18th appointment because she received a call from her son's school that he was ill and needed to be picked up immediately.  Ms. Madison states that she was available to provide notary services the remainder of that week, through April 20, 2007.  *See* Special Report, Attachment 56, Affidavit of Amy Madison.  Plaintiff has not refuted this evidence.

Plaintiff's Objection, Exhibits 16 and 17.  In response to both grievances, Plaintiff was

advised as follows:

> There is more than one notary at this facility.  If you have a provable deadline
> and Ms. Madison is unavailable you can notify the law librarian and an
> alternate notary will be provided.

*See* Special Report Attachment 36 at 2 and Attachment 37 at 2.  Plaintiff does not allege, nor

has he provided evidence that notary services were not available to him at any times other

than the limited time period on April 17 and April 18, 2007.  Moreover, Defendants have

provided evidence that the services of at least two other notaries, Rodney Redman and Becky

Guffy, were available during the week of April 16th through the 20th.  *See* Special Report,

Attachment 57, Affidavit of Rodney Redman, ¶ 3; Attachment 58, Affidavit of Becky Guffy,

¶ 5.[21]

The affidavit requirement is set forth in the ODOC's grievance restriction procedures

which state that a "duly verified affidavit, made under penalty of discipline for lying to staff"

must be attached to a grievance.  *See* Special Report, Attachment 53, Inmate/Offender

Grievance Process, OP-090124(IX)(B)(2)(a).  Defendant Warden Parker explains the

disciplinary reasons for this requirement as follows:

> Because policy allows that disciplinary action may be taken against an inmate
> if the contents of a grievance are found to be not true and correct, we require
> that each page of the affidavit be signed and notarized.  In the event that the
> affidavit is presented in a disciplinary hearing as evidence, the notarized

---

[21]The record demonstrates that between April 3, 2007 and April 16, 2007, Ms. Madison
provided notary services to Plaintiff for purposes of submitting grievances on at least ten occasions.
*See* Special Report, Attachments 15, 17, 18, 19, 25-29 and 35.

signature that is affixed to each page would authenticate the author and the contents of the grievance and would render it indisputable.

*See* Special Report, Attachment 54, Affidavit of David B. Parker, ¶ 3.

Plaintiff contends the affidavit requirement was satisfied as to each of the grievances submitted because, in lieu of an affidavit, he submitted a "Statement Under Penalty of Perjury" pursuant to Okla. Stat. tit. 12, § 426.[22]  Plaintiff's contention is unavailing.  As the Supreme Court explained in *Jones v. Bock*, it is the prison's own requirements that define the boundaries of administrative exhaustion.  *Id*. 127 S.Ct. at 923.  Here, the ODOC requires a duly verified affidavit.  It is not the role of this Court to change the ODOC's grievance procedures or to substitute those requirements with a finding of substantial compliance based on Okla. Stat. tit. 12, § 426.  *See Turner v. Safley*, 482 U.S. 78, 84-85 (1987) (recognizing a policy of judicial restraint and deference to prison authorities regarding matters of prison administration).[23]  Because Plaintiff did not re-submit the grievances with affidavits as

---

[22]Section 426 provides in relevant part:

> Whenever, under any law of Oklahoma or under any rule, order, or requirement made pursuant to the law of Oklahoma, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn statement, declaration, verification, certificate, oath, or affidavit, in writing of the person making the same (other than a deposition, or any oath of office, or an oath required to be taken before a specified official other than a notary public), the matter may with like force and effect be supported, evidenced, established, or proved by the unsworn statement in writing of the person made and signed under penalty of perjury setting forth the date and place of execution and that it is made under the laws of Oklahoma. . . .

Okla. Stat. tit. 12, § 426 (Supp. 2002).

[23]The ODOC contends that under Oklahoma's Administrative Procedure Act, Okla. Stat. tit. 12, § 426 does not apply to the ODOC's internal agency policies and procedures.  This Court need not decide that issue.

required by the ODOC grievance restriction procedures, the claims raised in Counts IX-XI and XIV-XVI are unexhausted.[24]

## Count XIII – Grievance Restriction

Plaintiff claims in Count XIII of the Complaint that his placement on grievance restriction has rendered administrative remedies unavailable to him as to certain claims because at the time he was placed on grievance restriction, grievances JCCC-07-50, JCCC-07-51 and JCCC-07-52 were returned to him unanswered.[25]   In addition, Plaintiff claims when the grievances were returned unanswered, Defendant Guffy did not provide page two of the grievance which contains the form necessary to appeal the denial of a grievance. Plaintiff makes these allegations in support of a claim for relief and not simply as a basis for defeating Defendants' exhaustion defense.  *See* Complaint at 15.

---

[24]The Special Report includes additional and related grievances submitted by Plaintiff as to the claims raised in Counts IX and  XIV-XVI that were either filed after Plaintiff filed this lawsuit in federal court or remained pending in the prison grievance process at the time he filed the lawsuit. *See* Special Report Attachments 43, 44 and 46.  Each of these grievances were returned unanswered and among the procedural defects noted, was Plaintiff's failure to have the grievance affidavits notarized.  Regardless of the deficiency, because these grievances were either initiated after or remained pending at the time Plaintiff filed this lawsuit, they do not serve as evidence of exhaustion of administrative remedies.  *See, e.g., Peoples v. Gilman*, 109 Fed. Appx. 381, 383 (10th Cir. Sept. 23, 2004) (unpublished op.) (district court properly rejected as evidence of exhaustion of administrative remedies grievance submitted to prison officials after prisoner has filed lawsuit in federal court: "[t]he filing of a grievance after the initiation of the lawsuit defeats the purpose of [§1997e(a)]").

[25]As discussed *supra*, grievances JCCC-07-50 and JCCC-07-52 address the claims raised in Counts V and VII of the Complaint.  JCCC-07-51 relates to the claim raised in Count VI and, as discussed *supra*, Plaintiff has eliminated that claim by amendment.

It is undisputed by the parties that grievance JCCC-07-60 governs exhaustion of this claim. *See* Plaintiff's Objection at 6 and Exhibit 11; *see also* Special Report, Attachment 28.

On April 5, 2007, Plaintiff submitted a Request to Staff challenging his placement on grievance restriction and requesting that the "simple 3-step procedure of exhaustion" be made available to him.  *See* Plaintiff's Objection, Exhibit 11 at 5; *see also* Special Report, Attachment 28 at 1.  On April 11, 2007, Plaintiff was advised by Deputy Warden Redman that relief would be denied and that the issue had previously been answered in a Request to Staff dated April 5, 2007.  *See id.*, Exhibit 11 at 6; Attachment 28 at 2.  (Defendants have attached to the Special Report grievance CCC-07-72.  *See* Special Report, Attachment 35. The Request to Staff accompanying that grievance is the one referenced in Deputy Warden Redman's denial of relief.).

On April 16, 2007, Plaintiff submitted a grievance which was returned unanswered on April 17, 2007.  *See id.*, Exhibit 11 at 1-4; Attachment 28 at 3-5.  Plaintiff was advised that the grievance was being returned because Plaintiff was on grievance restriction and the proper documentation had not been included.  *See* Attachment 28 at 5.  In addition, Plaintiff was advised that the affidavit did not contain a sufficient grievance description. *Id*.

There is no evidence that Plaintiff took any further steps regarding exhaustion of administrative remedies as to this claim.  Because Plaintiff did not follow the proper grievance procedure the claim raised in Count XIII of the Complaint is subject to dismissal on exhaustion grounds pursuant to 42 U.S.C. § 1997e(a).

In the alternative, Plaintiff's claim should be dismissed for failure to state a claim upon which relief may be granted. Prison grievance procedures do not create a protected liberty interest and, therefore, do not implicate a prisoner's due process rights. *See Murray v. Albany County Board of County Commissioners*, No. 99-8025, 2000 WL 472842, at *2 (10th Cir. Apr. 20, 2000) (unpublished op.) ("[P]rison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.'") (*quoting Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)); *Anderson v. Colorado Dept. of Corrections*, No. 98-1477, 1999 WL 387163, at *2 (10th Cir. June 14, 1999) (unpublished op.) (holding that a state inmate's § 1983 "allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner"). *See also Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (holding that federal prison administrative remedy procedures do not "in and of themselves" create a liberty interest in access to that procedure; finding the prisoner's right to petition the government for redress is the right of access to the courts, a right that is not compromised by the prison's refusal to entertain his grievance); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that the Constitution creates no entitlement to grievance procedures or access to such procedures voluntarily established by the state); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding there is no legitimate claim of entitlement to a grievance procedure). Accordingly, Plaintiff's "alleged denial of access to state administrative grievance procedures

has not resulted in a violation of his constitutional rights." *Walters v. Corrections Corp. of America*, 119 Fed. Appx. 190, 191 (10th Cir. Dec. 7, 2004) (unpublished op.).

Although the Court could liberally construe Count XIII of the Complaint as raising a claim of denial of access to the Courts, *see Bounds v. Smith*, 430 U.S. 817, 828 (1977), the Court declines to do so. In Count XIX of the Complaint, Plaintiff brings a separate claim alleging denial of access to the courts based on the same conduct of Guffy, *i.e.,* placing Plaintiff on grievance restriction. Therefore, the Court need not liberally construe Count XIII of the Complaint to include such a claim.

In sum, the claim raised in Count XIII of the Complaint should be dismissed for failure to exhaust administrative remedies or, in the alternative, for failure to state a claim upon which relief may be granted.

### Count XVII – Expenditure of Canteen Operations Fund

Plaintiff claims in Count XVII of the Complaint that his freedom of religious expression has been substantially burdened as a result of the expenditure of canteen funds on "food for special occasions" for JCCC staff and employees. Plaintiff claims these funds should be used to purchase special foods that are consumed as part of Muslim religious feasts and not just used to purchase special foods for secular purposes. *See* Complaint at 17. It is undisputed by the parties that grievance JCCC-07-83 governs the issue of exhaustion of administrative remedies with respect to the claim raised in Count XVII of the Complaint. *See* Plaintiff's Objection at 6 and Exhibit 18; *see also* Special Report, Attachment 39.

On May 7, 2007, Plaintiff submitted a Request to Staff requesting that he receive food for special religious feasts.  *See* Special Report, Attachment 39 at 1.  In response, Warden Parker requested that Plaintiff explain how the request did not involve a claim that Plaintiff had raised in previous and pending litigation.  *See id.*, Attachment 39 at 2.  Plaintiff did not supplement his grievance with the requested information.

Plaintiff then filed a grievance on May 10, 2007.  *See id.*,  Attachment 39 at 3-4.  The grievance was returned unanswered because Plaintiff was on grievance restriction and had not included the proper documentation.  *See* Attachment 39 at 5.  There is no evidence that Plaintiff took any further steps regarding exhaustion of administrative remedies as to this claim.  Because Plaintiff did not follow the proper grievance procedure, the claim raised in Count XVII of the Complaint is unexhausted.

### Count XIX – Retaliation to Impede Exhaustion of Administrative Remedies

In Count XIX of the Complaint, Plaintiff claims Defendant Guffy sent a threatening letter to him to impede his efforts to exhaust administrative remedies thereby preventing him from bringing a civil rights lawsuit in federal court.  *See* Complaint at 18.  It is undisputed by the parties that grievance JCCC-07-56 governs the issue of exhaustion of administrative remedies with respect to the claim raised in Count XIX of the Complaint.  *See* Plaintiff's Objection at 6 and Exhibit 9; *see also* Special Report, Attachment 26.

Plaintiff filed a Request to Staff on March 30, 2007, complaining that a letter written by Defendant Guffy dated March 26, 2007, was a threatening letter intended to interfere with his ability to pursue claims through the administrative grievance process and to retaliate

against Plaintiff for petitioning the government for redress. *See* Special Report, Attachment 26 at 1. The Request to Staff was returned unanswered and Plaintiff was advised he had not followed the proper procedure. *See id.* Plaintiff then filed a grievance on April 4, 2007. *See id.*, Attachment 26 at 2-3. The grievance was returned unanswered on April 8, 2007. *See id.*, Attachment 26 at 4. Plaintiff was advised that he was on grievance restriction and did not include proper documentation. Plaintiff was further advised that he had failed to include a description of each grievance on the affidavit. *See id.* There is no evidence that Plaintiff took any further steps regarding exhaustion of administrative remedies as to this claim. Because Plaintiff did not follow the proper grievance procedure, the claim raised in Count XIX of the Complaint is unexhausted.

## Count XX – Participation in Kairos

In the twentieth and final count of the Complaint, Plaintiff claims his Fourteenth Amendment rights were violated because he was not allowed to participate in Kairos, a Muslim religious holiday. As part of this claim, Plaintiff alleges he was not allowed to participate in retaliation for Plaintiff having sent correspondence to an Oklahoma state senator to recommend that a former ODOC female employee be honored by naming a facility at JCCC after her. *See* Complaint at 18.[26]

---

[26]On December 6, 2006, Plaintiff sent a letter to Oklahoma State Senator John Sparks, requesting the JCCC Arts Auditorium be named in honor of a former ODOC female employee, Carolyn Jane Snow. *See* Special Report, Attachment 55 at 3-8. Senator Sparks responded by sending a letter to Defendant Warden Parker on January 16, 2007, and forwarding Plaintiff's correspondence. *See id.* Attachment 55 at 2. On February 5, 2007, Defendant Parker responded to Mr. Sparks as follows:

(continued...)

It is undisputed by the parties that grievance JCCC-07-40 governs exhaustion of administrative remedies with respect to the claim raised in Count XX of the Complaint. *See* Plaintiff's Objection at 6 and Exhibit 1; *see also* Special Report, Attachment 15.

Plaintiff submitted a Request to Staff on February 27, 2007, requesting that his name be returned to the list of inmates approved to participate in Kairos from March 1 through March 4, 2007.  *See* Exhibit 1 at 4; Attachment 15 at 1.  Plaintiff was advised his name had been removed from the list because he previously had participated in Kairos.  *Id*.

Plaintiff then filed a grievance on March 15, 2007, claiming he had been removed from the list in retaliation for having written to Senator Sparks and Dr. Clarence Parker about his request to honor Ms. Snow, the former ODOC employee.  *See* Exhibit 1 at 1-2; Attachment 15 at 2-4.  Plaintiff received a response to the grievance from Rodney Redman, acting Warden.  Relief was denied.  Plaintiff was advised that his recommendation regarding Mrs. Snow was not a factor in making the determination as to which inmates would be selected to participate in Kairos.  *See* Exhibit 1 at 2; Attachment 15 at 4.

---

[26](...continued)
You have may have received this request due to my prior response to Mr. Jerry Thomas #85779, where I declined to pursue his request.  While I did not personally have the privilege of know [sic] Ms. Snow, I am sure she is deserving.  There are some issues that would have to be addressed prior to any name change to a state owned building.  The fact she never worked at this facility, staff and local support may prove difficult.  If you truly feel this matter should be further pursed [sic] I would refer you to Mike Oakley in our legal division.

*See id*., Attachment 55 at 1.

Plaintiff then filed an appeal of the grievance denial on March 21, 2007. *See* Exhibit 1 at 2; Attachment 15 at 4. On March 28, 2007, Plaintiff was advised that his grievance was being reviewed by Warden Parker and that Plaintiff would receive an amended response. *See* Attachment 15 at 6. On April 11, 2007, Plaintiff received an amended response advising him as follows:

> There were 42 open positions for Kairos #13, with an additional 10 helper positions. 99 applications were processed with 42 being accepted and 47 being declined. The open positions were filled with those that had the least amount of time remaining and then by other criteria such as properly filling out the application. You have approximately 50699 days remaining and your application was not filled out properly. Your recommendation regarding Mrs. Snow was not an issue. That accusation that your name was removed in retaliation is unsubstantiated. You may resubmit an application for the next scheduled Kairos. Monetary damages are not addressed at the facility level.

*See* Attachment 15 at 7. Plaintiff then filed an appeal of the grievance denial. The grievance appeal was returned unanswered. *See* Attachment 15 at 9. Plaintiff was advised that he was on grievance restriction and did not include proper documentation. He was further advised of the following additional deficiencies: attachments to the grievance (no additional pages allowed except one "Request to Staff"); "Do not write on the front of the 'Grievance Response from Reviewing Authority' form." *See id.* There is no evidence that Plaintiff resubmitted a grievance or otherwise took any further steps regarding exhaustion of administrative remedies as to this claim. Because Plaintiff did not follow the proper grievance procedure, the claim raised in Count XX of the Complaint is unexhausted.

In sum, the evidentiary record before the Court establishes, as a matter of law, that the claims raised in Counts I, III-V, VII-XI, XIII-XVII and XIX-XX are not properly

exhausted as required by 42 U.S.C. § 1997e(a)  and that Plaintiff's claims should be dismissed.

### C.    Dismissal of Claims for Failure to State a Claim Upon Which Relief May be Granted

Defendants seek summary judgment as to each of Plaintiff's claims for relief on exhaustion grounds.  However, as to the claims raised in Counts XII and XVIII, the record fails to demonstrate, as a matter of law, that Defendants  have met their burden of proof on exhaustion so as to be entitled to dismissal of the claims on this basis.  Nonetheless, the Court *sua sponte* finds the claims should be dismissed for failure to state a claim upon which relief may be granted.  The Court's authority to dismiss the claims *sua sponte* is governed by 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e(c)(2).

### 1.    Count XII – Retaliation

Plaintiff alleges in Count XII of the Complaint that he received a misconduct for having in his cell a religious garment (a Kufi cap) in retaliation for filing grievances. *See* Complaint at 14.  The misconduct incident occurred on April 20, 2007.  *See* Special Report, Attachment 49 at 9, Incident/Staff Report.  Plaintiff was found guilty of the misconduct and the conviction was affirmed on final appeal to the Director's Designee, Debbie L. Morton.  *See id*. Attachment 49 at 1, Response from Director or Designee.

Plaintiff relies upon grievance ODOC-07-871 as evidence that he has exhausted administrative remedies with respect to the claim raised in Count XII of the Complaint.  *See*

Plaintiff's Objection at 6 and Exhibit 19.[27]   On April 23, 2007, Plaintiff submitted a grievance directly to Defendant Justin Jones, designating the grievance as sensitive by writing the words "Sensitive Grievance" across the top of the Inmate/Offender Grievance Report Form.   Pursuant to ODOC policy, when a grievance concerns a complaint of a "sensitive nature" the grievance may be submitted directly to the reviewing authority without informal resolution.   *See* Special Report, Attachment 53, Inmate/Offender Grievance Procedure, OP-090124 (VIII)(A).  Plaintiff provides no evidence that he received a response to this grievance.  Pursuant to ODOC policy, if an inmate does not receive a response to a grievance, he may submit a grievance to the administrative review authority advising that no response to a grievance has been received.  *See id.*, ODOC OP-090124 (V)(C)(4).  Plaintiff fails to provide evidence that he submitted a grievance advising the administrative review authority that no response had been received.  To that end, Plaintiff has not provided any evidence to demonstrate the grievance was received by Defendant Jones.   Therefore, it appears that Plaintiff has failed to follow the procedures required to exhaust administrative remedies as to  the claim raised in Count XII of the Complaint.

Nonetheless, the burden of establishing a failure to exhaust administrative remedies rests on Defendants.  *See Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) ("We . . .

---

[27]No record of the grievance attached to Plaintiff's Objection as Exhibit 19 is included in the Special Report.  There is one grievance included in the Special Report that references Plaintiff's misconduct conviction, grievance JCCC-07-88.  *See* Special Report, Attachment 40 at 2-3.  In that grievance, Plaintiff seeks restoration of phone privileges.  *Id.*  Other than making reference to the misconduct conviction, the grievance does not relate to the claim raised in Count XII.

hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant.").   Although Defendants move for dismissal of all of Plaintiff's claims for failure to exhaust administrative remedies, Defendants have failed to establish facts to support dismissal on this ground as to the claim raised in Count XII.   For example, Defendants have failed to provide an affidavit stating that Plaintiff did not submit a grievance on this issue, or otherwise address the sensitive grievance ODOC-07-871 (and its potential deficiencies) that Plaintiff submits in response to Defendants' motion.

Dismissal of the claim raised in Count XII is proper, however, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e(c)(2). A state prisoner's claim for monetary damages under 42 U.S.C. § 1983 is not cognizable if a judgment in favor of the plaintiff would necessarily imply the invalidity of his prison disciplinary conviction unless the prisoner can first demonstrate the conviction has been invalidated.   *See Edwards v. Balisok*, 520 U.S. 641 (1997).   A claim, like that raised here, that the misconduct conviction resulted from the retaliatory conduct of prison officials is similarly barred by this principle. *See Roberts v. Champion*, 91 Fed. Appx. 108, 110 (10th Cir. Feb. 11, 2004) (unpublished op.) ("[I]n order to prevail on his retaliation claim, plaintiff must necessarily establish that his conviction for the menacing offense was wrongfully obtained, and therefore invalid. Thus, plaintiff's retaliation claim is not cognizable under § 1983 unless and until the menacing conviction has been expunged or overturned as a matter of state law.").   *See also Miller v. Edminsten*, 161 Fed. Appx. 787, 789 (10th Cir. Jan. 6, 2006) (unpublished op.) (dismissing prisoner's claim alleging that in retaliation for exercising his First Amendment rights, prison

officials filed false disciplinary charges against him; because a judgment in prisoner's favor on the retaliation claim would necessarily imply the invalidity of the disciplinary convictions, prisoner would first have to challenge the convictions in a habeas corpus proceeding before proceeding on his § 1983 claim).  Plaintiff has failed to allege that the misconduct conviction has been reversed or expunged and the record demonstrates otherwise.[28]  Therefore, the claim raised in Count XII of the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

## 2. Count XVIII – Retaliation

Plaintiff also brings a retaliation claim in Count XVIII of the Complaint. Plaintiff alleges that "Defendants denied me a direct appeal of a misconduct finding of guilty in retaliation for my suing DOC colleagues." *See* Complaint at 17.  Prison officials may not retaliate against an inmate because of the inmate's exercise of his constitutional rights. *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).  To state a valid retaliation claim, a prisoner must show that but for the retaliatory motive, the incident about which the prisoner complains would not have taken place.  *Id*.  The prisoner must allege specific facts showing retaliation due to the exercise of his constitutional rights.  *Id*.

---

[28]The misconduct record, attached to the Special Report, is not disputed by Plaintiff. Therefore, the Court may consider this record for purposes of determining whether Plaintiff has stated a claim for relief.  *See Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991) (holding that "in particular circumstances the *Martinez* report may be considered part of the pleadings for purposes of Fed. R. Civ. P. 12(b)").

Plaintiff claims he was retaliated against for exercising his constitutional right of access to the courts. However, he wholly fails to allege specific facts demonstrating that but for suing the ODOC officials he would not have been denied the right to appeal his misconduct conviction. For instance, Plaintiff fails to identify when he sued ODOC officials, what the basis for the claims against those ODOC officials were, and what knowledge, if any, the Defendants in this action had concerning the lawsuit. Therefore, Plaintiff has failed to state a claim for retaliation upon which relief may be granted.

More to the point, the record demonstrates Plaintiff was not denied the right to appeal his misconduct conviction. Attached to the Special Report is the record of Plaintiff's misconduct. The record establishes that on May 1, 2006, during a new arrival review at JCCC, Plaintiff refused to sign his name, Jerry Thomas, in accordance with ODOC policy, instead using the name Madyan Abdulhaseeb. As a result, he was charged with a misconduct offense for disobedience to orders, offense code 12-1. He was found guilty of the offense on May 5, 2006. *See* Special Report, Attachment 12 at 19. On June 7, 2006, Plaintiff filed an appeal of the misconduct conviction. *See* id. at 16-18. In response to the appeal, Plaintiff was granted a re-hearing and the investigator was ordered to amend the violation to individual disruptive behavior, offense code 02-13, for carrying out an action designed to coerce administration. *See id.* at 14-15.[29]

---

[29]As Plaintiff was advised, when he received notification that a rehearing had been ordered, that notification was the appeal response. *See* Special Report, Attachment 12 at 1, Response from Director or Designee.

A new hearing was held and on July 5, 2006, Plaintiff was found guilty of individual disruptive behavior.  *See id*. at 8.  Plaintiff then filed an appeal of this misconduct conviction on July 16, 2006.  *See id*. at 5-7.  The facility head affirmed the conviction on July 25, 2006.  *See id*. at 2-4.  Plaintiff then appealed the conviction to the director and the director's designee affirmed the conviction on August 23, 2006.  *See id*. at 1.  Therefore, based on the undisputed administrative record contained in the Special Report, Petitioner has no plausible basis upon which to claim he was denied the right to appeal his misconduct conviction.  Accordingly, his retaliation claim, premised on allegations  that he was denied the right to appeal, should be dismissed for failure to state a claim upon which relief may be granted.

### D. <u>Plaintiff's RLUIPA and Section 1983 Free Exercise Clause Claims – Counts III, IV, V, VII, VIII and IX</u>

Defendants alternatively seek dismissal of Plaintiff's claims raised in Counts III, IV, V, VII, VIII and IX of the Complaint on the ground that Plaintiff has failed to allege a "substantial burden."  Defendants fail to articulate whether they move for dismissal of the claims raised in these Counts for failure to state a violation of Plaintiff's First Amendment rights under the Free Exercise Clause, RLUIPA, or both.  However, because both the Free Exercise Clause and RLUIPA require a showing by Plaintiff that Defendants have placed a substantial burden on his ability to practice his religion, both claims are addressed.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (to allege a constitutional violation under the Free Exercise Clause, the prisoner must show that a prison regulation substantially burdened

sincerely held religious beliefs); 42 U.S.C. §2000cc-1(a) (RLUIPPA).[30] A substantial burden

is one that "'put[s] substantial pressure on an adherent to modify his behavior and to violate

his beliefs.'" *Lovelace v. Lee,* 472 F.3d 174, 187 (4th Cir. 2006) (*quoting Thomas v. Review*

*Board of Ind. Empl. Sec. Div.*, 450 U.S. 707, 718 (1981)).

     In Count III, Plaintiff claims that Defendants have engaged in improper conduct by

training inmates to serve as "de facto" clergy to conduct Islamic services.  Plaintiff's claims

in Counts IV, V, VII, and IX, are premised on allegations that through various conduct and

actions, Defendants are promoting Christianity: Count IV (display of crucifix in sanctuary),

Count V (management of religious volunteer program by Protestant Christians); Count VII

(volunteer program establishes Protestant Christianity as the State religion); Count IX

(satellite broadcast of Christian network station).  While Plaintiff claims this conduct

promotes Christianity, he fails to identify how this conduct has substantially burdened any

religious exercise of his own Muslim faith.  Finally, in Count VIII, Plaintiff claims

---

[30]Section 3 of RLUIPA provides:

> No government shall impose a substantial burden on the religious
> exercise of a person residing in or confined to an institution, as
> defined in section 1997 of this title, even if the burden results from
> a rule of general applicability, unless the government demonstrates
> that imposition of the burden on that person -
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental
> interest.

42 U.S.C. § 2000cc-1(a).  Under RLUIPA, the term "government" includes "any . . . person acting
under color of state law."  42 U.S.C. § 2000cc-5.

Defendants' refusal to use his Muslim name substantially burdens his religious exercise. [31]

Plaintiff does not demonstrate through his allegations that he has been impacted in his ability to practice his religion, including being prevented from participating in religious ceremonies, limiting his access to a religious practice, or otherwise hindering his ability to adhere to the tenets of his faith. He has failed to allege that Defendants' conduct has required him to modify his behavior and to violate his beliefs.  Because Plaintiff's claims are based on wholly conclusory allegations, his First Amendment free exercise and RLUIPA claims raised in Counts III, IV, V, VII, VIII and IX should be dismissed for failure to state a claim upon which relief may be granted. [32]

### E.    Personal Participation

As yet an additional and alternative basis for dismissal of Plaintiff's claims, Defendants contend that Plaintiff has failed to allege facts demonstrating an affirmative link between the alleged conduct of one or more of the Defendants and the violation of Plaintiff's constitutional rights with respect to the claims raised in Counts I, III, IV, V, VII, VIII, IX, X, XI, XII and XIII. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal

---

[31]As noted previously, the DOC has not prohibited Plaintiff from using his Muslim name; he just must include his incarcerated name on official forms. *See supra*, footnote 17.

[32]Plaintiff's claims blend protections provided by the Free Exercise Clause and the Establishment Clause.  Plaintiff repeatedly alleges that Defendants' conduct "substantially burdens" his religious rights by "establishing" Christianity as the State religion.  In addition, liberally construing Plaintiff's Complaint, he may also be bringing an equal protection claim based on allegations suggesting that Christian inmates are treated more favorably than Muslim inmates. Defendants have not addressed Plaintiff's claims under the Establishment Clause or the Equal Protection Clause.  Because Plaintiff's claims are subject to dismissal on other grounds, the Court need not address these additional issues.

participation is an essential allegation in a § 1983 claim).  In response, Plaintiff has filed a Motion for Leave to File an Amended Complaint [Doc. #40] so that he can cure any deficiencies with respect to the allegations of Defendants' personal participation.  Defendants have filed a Response to Plaintiff's Motion to Amend [Doc. #42] and object to Plaintiff's Motion on the ground that "a favorable determination as to §1997e exhaustion will be dispositive of most, if not all, of Plaintiff's claims."  *See* Defendants' Response at 1, ¶ 2.

Because it is recommended that Plaintiff's Complaint be dismissed pursuant to 42 U.S.C. § 1997e(a) and/or 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e(c)(2) the Court need not separately address the defense of personal participation. As discussed *infra*, for this reason, Plaintiffs' Motion to Amend should be denied.

### F.    Eleventh Amendment Sovereign Immunity

Defendants seek dismissal of Plaintiff's official capacity claims for monetary damages brought pursuant to 42 U.S.C. § 1983 on the ground that those claims are barred by the Eleventh Amendment.[33]  The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State. . . ." U.S. Const. amend. XI. This Amendment precludes not only actions in which the state is directly named as a party, but also actions brought against a state agency or state officer where the action is

---

[33]Defendants seek dismissal of Plaintiff's § 1983 claims for monetary damages on behalf of the "DOC Defendants."  Defendants do not define which Defendants fall within this description. The Court construes the request for dismissal to be raised on behalf of all the Defendants to the extent they are being sued in their official capacities.

essentially one for recovery of money from the state treasury. *See Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (barring any "retroactive award which requires the payment of funds from the state treasury" and limiting the federal courts to providing only "prospective injunctive relief" against state officials sued in their official capacity).

The State of Oklahoma has not waived the defense of sovereign immunity as to claims brought pursuant to § 1983. *See Callahan v. Poppell*, 471 F.3d 1155, 1158-1159 (10th Cir. 2006). Therefore, Plaintiff's § 1983 claims for monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment.

It does not appear Defendants have raised the defense of sovereign immunity with respect to Plaintiff's RLUIPA claims. Notably, a split in circuit authority has developed as to whether RLUIPA waives a state's Eleventh Amendment immunity. *Compare Lovelace v. Lee*, 472 F.3d at 192 ("[O]ur court holds that a state's Eleventh Amendment immunity from suit for damages is not waived in RLUIPA.") *with Benning v. Georgia*, 391 F.3d 1299, 1305 (11th Cir. 2004) ("Congress unambiguously required states to waive their sovereign immunity from suits filed by prisoners to enforce RLUIPA.") *rehearing en banc denied*, 129 Fed. Appx. 603 (11th Cir. 2005). The Tenth Circuit Court of Appeals has not yet decided the issue. Because Defendants cite only case law addressing sovereign immunity in the context of claims brought pursuant to § 1983, the Court declines to address the issue in the context of RLUIPA.[34]

---

[34]Based on the allegations of the Complaint, Plaintiff brings his RLUIPA claims directly and not pursuant to 42 U.S.C. § 1983. Therefore, whether Eleventh Amendment immunity would also

(continued...)

### G.    **Qualified Immunity**

As further grounds for dismissal of the claims raised in Plaintiff's Complaint, Defendants raise the defense of qualified immunity.  To determine whether a defendant is entitled to qualified immunity, the reviewing court must determine whether the defendant's actions, as alleged in the complaint, violated a constitutional or statutory right and, if so, whether the right allegedly violated was clearly established.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).   Defendants have raised the defense of qualified immunity in the most cursory manner and failed to conduct an analysis as to each of the twenty counts for relief to show that, viewing the evidence in the light most favorable to Plaintiff, he has failed to allege the denial of a federal constitutional right.  Because alternative grounds for dismissal of the claims raised in the Complaint exist, the Court declines to address this defense.

---

[34](...continued)
operate to bar his RLUIPA claims is deemed a separate issue.  Moreover, to the extent RLUIPA creates its own remedial scheme, Plaintiff would be foreclosed from using § 1983 as a means to redress his RLUIPA claims.  *See City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113 (2005) (where Congress creates a specific statutory remedy, it usually does so to the exclusion of § 1983). *See also Christian Methodist Episcopal Church v. Montgomery*, No. 4:04-CV-22322-RBH, 2007 WL 172496 (D. S.C. Jan. 18, 2007) (unpublished op.) (dismissing RLUIPA claim brought pursuant to § 1983 claim and finding that RLUIPA claim does not lie under § 1983 because RLUIPA has it own remedial relief for a violation); *Chase v. City of Portsmouth*, No. CIV.A. 2:05CV446, 2005 WL 3079065 at *5 (E.D. Va. Nov. 16, 2005) (unpublished op.) (finding Plaintiff could not use § 1983 as a vehicle for bringing a RLUIPA claim because RLUIPA has its own remedial scheme).

V.     **Plaintiff's Pending Motions**

As noted earlier, Plaintiff has filed a Motion for Leave to File Amended Complaint [Doc. #40] and a Motion to Conduct Discovery [Doc. #54]. Plaintiff seeks leave to amend to cure deficiencies in the Complaint regarding the sufficiency of his allegations of Defendants' personal participation.  *See* Plaintiff's Motion at 1 (requesting leave to amend to show "an affirmative link between the Defendants and all of the claims of constitutional violations in the complaint").  Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires."  However, leave to amend may be denied where amendment would be futile.  *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007). As set forth above, Plaintiff's claims are unexhausted and/or subject to dismissal for failure to state a claim upon which relief may be granted on other grounds.  Supplementing the Complaint with allegations of personal participation will not save the  claims raised in the Complaint from dismissal.  *See Anderson*, 499 F.3d at 1238 (amendment of a complaint is futile if the complaint, as amended, would remain subject to dismissal).  Therefore, Plaintiff's Motion for Leave to Amend should be denied.

For similar reasons, Plaintiff's Motion to Conduct Discovery should be denied. Plaintiff does not identify particular discovery he seeks, but in conclusory fashion states that such discovery is necessary to oppose Defendants' Motion to Dismiss/Motion for Summary Judgment.  Plaintiff has filed an objection to Defendants' Motion and attached to that objection significant evidentiary materials.  Therefore, Plaintiff has not demonstrated that he has been prevented from opposing Defendants' Motion.   As detailed above, Plaintiff's

claims are subject to dismissal for failure to exhaust administrative remedies and/or for failure to state a claim upon which relief may be granted.  Therefore, discovery should not be permitted.

## **RECOMMENDATION**

For the reasons set forth below, it is recommended that Defendants' Motion [Doc. #36], construed in part as a motion for summary judgment, be granted and that the claims raised in Counts I, III-V, VII-XI, XIII-XVII and XIX-XX be dismissed for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).  It is further recommended that the claims raised in Counts XII and XVIII be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(2) for failure to state a claim upon which relief may be granted.  It is also recommended, in the alternative, that Defendants' Motion to Dismiss be granted as to the claims raised in Counts III, IV, V, VII, VIII and IX, alleging a violation of Plaintiff's rights under RLUIPA and Plaintiff's free exercise rights brought pursuant to 42 U.S.C. § 1983, because Plaintiff has failed to state a claim upon which relief may be granted.  It is further recommended that Plaintiff's claims for monetary damages brought pursuant to 42 U.S.C. § 1983 against the Defendants in their official capacities be dismissed on grounds of Eleventh Amendment immunity. Finally, it is recommended that  Plaintiff's Notice of Voluntary Dismissal [Doc. #27] be construed as an amendment to Plaintiff's Complaint filed as of right pursuant to Fed. R. Civ. P. 15(a), eliminating Counts II and VI of the Complaint.

It is further recommended that Plaintiff's Motion for Leave to File Amended Complaint [Doc. #40] and Motion to Conduct Discovery [Doc. #54] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation.  *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of this Court by June __16th__, 2008.  *See* Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred by the District Judge in this matter and terminates the referral.

ENTERED this __27th__ day of May, 2008.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE